

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| REBECCA L. HARRIS, | ) | No. ED100751 |
| | ) | |
| Petitioner/Appellant, | ) | Appeal from the Circuit Court of the |
| | ) | St. Charles County |
| vs. | ) | |
| | ) | Honorable Daniel G. Pelikan |
| JAMES PRESSON, | ) | |
| | ) | |
| Respondent. | ) | Filed: October 7, 2014 |

## I. INTRODUCTION

Plaintiff Rebecca Harris appeals the judgment of the Circuit Court of St. Charles County dismissing her negligence claim against defendant James Presson. On appeal, Harris argues that the trial court erred, because Presson's violation of her right to counsel under the Fifth Amendment of the United States Constitution supports a common-law negligence claim against him. We affirm the trial court's judgment.

## II. FACTS

On November 29, 2007, Harris was arrested in connection with the grievous injury of a four-month-old infant for whom she had been an in-home nanny. Under interrogation by Presson, who was then a detective with the St. Peters, Mo., police department, Harris confessed to harming the infant. This confession was subsequently admitted at trial and Harris was convicted by jury of Assault in the Second Degree, § 565.060, R.S.Mo. (2000).

On appeal, this Court reversed Harris's conviction, because Presson obtained the confession in violation of Harris's Fifth Amendment right to counsel. *See State v. Harris*, 305 S.W.3d 482, 490 (Mo. App. E.D. 2010). Thereafter, with full knowledge that her improperly obtained confession could not be used in a new trial, Harris pleaded guilty to Assault in the Second Degree pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). The trial court sentenced Harris to time served, which amounted to 550 days imprisonment.

On June 4, 2013, Harris filed the instant lawsuit alleging that Presson's negligent violation of her right to counsel caused her to be imprisoned. She requested $550,000 in damages. The trial court dismissed her claim for failure to state a claim. This appeal follows.

## III. STANDARD OF REVIEW

"Our review of a dismissal for failure to state a claim is de novo." *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 197 (Mo. App. E.D. 2009). "A motion to dismiss for failure to state a claim . . . is solely a test of the adequacy of the petition." *Id.* "This Court does not attempt to weigh whether the alleged facts are credible or persuasive." *Armistead v. A.L.W. Grp.*, 155 S.W.3d 814, 816 (Mo. App. E.D. 2005). Rather, "we accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and we construe all allegations favorably to the pleader . . . . 'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *Id.* (quoting *Nazeri v. Mo.Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993)).

## IV. DISCUSSION

In her sole point on appeal, Harris contends that the trial court erred by dismissing her claim, because Presson's violation of her right to counsel under the Fifth Amendment of the United States Constitution supports a common-law negligence claim against him. Specifically,

2

Harris argues that Presson violated a departmentally-mandated duty to cease questioning her when she invoked her right to counsel, and that this breach was the proximate cause of the "extreme mental and emotional distress" she suffered in prison. In response, Presson argues that he owed no duty to Harris under the Fifth Amendment, and that even if he did owe a duty, he is shielded from liability by the doctrine of official immunity.

At the outset, we note that we need not resolve the issue of whether Presson owed a duty to Harris that is actionable in tort. Instead, as a matter of law, this appeal may be resolved on the issue of official immunity. Official immunity "connotes not only immunity from judgment but also immunity from suit." *State ex rel. Mo. Dep't of Agric. v. McHenry*, 687 S.W.2d 178, 181 (Mo. banc 1985). If official immunity applies, Harris's suit is barred, regardless of whether Presson owed her a duty.

The doctrine of official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). "This doctrine was established to protect officers from second-guessing based on hindsight." *Blue v. Harrah's N. Kansas City, L.L.C.*, 170 S.W.3d 466, 479 (Mo. App. W.D. 2005). "The official immunity doctrine, however, does not provide public employees immunity for torts committed when acting in a ministerial capacity." *Southers*, 263 S.W.3d at 610.

"Whether an act can be characterized as [ministerial or] discretionary depends on the degree of reason and judgment required." *Id.* "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* "A ministerial function, in contrast, is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner,

3

in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" *Id.* (quoting *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985)) "The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Id.*

Here, Presson's interrogation of Harris—including his allegedly negligent failure to cease questioning her when she invoked her right to counsel—was a discretionary act performed in the course of Presson's official duties. Presson's interrogation of Harris required him to rely on reason and judgment in assessing whether Harris's statements were sufficiently unequivocal to invoke her right to counsel, because a suspect is almost never so clear as to say: "I invoke my Fifth Amendment right to counsel, including my right to cease answering questions until I have my lawyer present to represent me." *Cf. Harris*, 305 S.W.3d at 485 ("To invoke a right to counsel pursuant to the Fifth Amendment, one must make an unambiguous, unequivocal and specific request for counsel."). Instead, an officer must determine for herself—in light of the often imprecise nature of conversational speech—if and when she should cease her questioning.

A comparison of cases in which the court held that the suspect's statement to police was sufficient to invoke the right to counsel, with cases in which the court held the suspect's statement was insufficient, illustrates the judgment required of an officer in determining whether to terminate an interrogation. For example, the court held in the following cases that the officer erred in determining the suspect failed to invoke the right to counsel. *See Smith v. Illinois*, 469 U.S. 91, 93 (1984) (where suspect stated, "Uh, yeah. I'd like to do that"); *State v. Olds*, 569 S.W.2d 745, 748-49 (Mo. banc 1978) (where suspect stated, "[I] would like to contact [my]

4

lawyer"); *State v. Gibson*, 623 S.W.2d 93, 96 (Mo. App. W.D. 1981) (where suspect stated, "[I] ought to get a lawyer," and "I think I need an attorney"). Yet in the cases following, the court held that the officer was correct that the suspect's statement was inadequate. *See State v. Bucklew*, 973 S.W.2d 83, 90 (Mo. banc 1998) (where suspect stated, "Well do you think I should have an attorney present?" and "How fast could you get an attorney here?"); *State v. Scott*, 943 S.W.2d 730, 740 (Mo. App. W.D. 1997) (where suspect stated, "Yeah, can you get me [a lawyer]," and then stated, "I'll wait . . . .," and then, "Let's continue"); *State v. Jones*, 914 S.W.2d 852, 860 (Mo. App. E.D. 1996) (where suspect stated, "Do I need an attorney?"); and *State v. Wilkinson*, 861 S.W.2d 746, 749 (Mo. App. S.D. 1993) (where suspect stated, "Could I call my lawyer?"). The distinction between these two groups of cases is not so plain as to suggest that an officer's decision to cease questioning is merely rote or mechanical. Rather, the officer must exercise "discretion in determining how or whether [the interrogation] should be done." *Southers*, 263 S.W.3d at 610.

Moreover, the discretionary nature of police conduct during an interrogation is illustrated by the legal standard courts use to review whether a suspect invoked her right to counsel. The court asks if the "accused . . . articulate[d] his or her desire to have counsel present sufficiently clearly that a *reasonable* police officer, *in the circumstances*, would *understand* the statement to be a request for an attorney." *Harris*, 305 S.W.3d at 485 (emphasis added). This standard does not ask whether an officer "stopped" when the law said "Stop!" *See, e.g.*, *Harris v. Munoz*, 43 S.W.3d 384, 389 (Mo. App. W.D. 2001) (holding that prison official's failure to follow department policy on handling of non-contraband inmate property, which resulted in the loss of prisoner's tape player and headphones, was violation of ministerial duty that required no expertise or judgment). Rather, this standard looks to whether the officer's judgment regarding

the import of a particular suspect's statement was reasonable under the particular circumstances existent at the time.

Finally, a holding that a police officer's duty to cease questioning a suspect when she invokes her right to counsel is ministerial would have unworkable consequences. It would give officers cause to fear personal liability for negligence each and every time they question a suspect in the course of a legitimate investigation of a crime. An interrogating officer would shrink from the vigorous pursuit of the truth, because misunderstanding a suspect's request for counsel—no matter how earnest the error—could be financially ruinous for herself and her dependents. We believe the existent remedy of suppressing evidence of self-incrimination obtained in violation of a suspect's Fifth Amendment rights is adequate both to deter improper police conduct and to safeguard the liberties of the accused. *Cf. Hannon v. Sanner*, 441 F.3d 635, 637 (8th Cir. 2006) (explaining duty of officer to cease questioning upon suspect's request for counsel "is a procedural safeguard . . . [and] the remedy for . . . violation is the exclusion from evidence of any compelled self-incrimination" (quoting *Warren v. City of Lincoln*, 864 F.2d 1436, 1442 (8th Cir. 1989) (en banc))).

Presson's interrogation of Harris—including his allegedly negligent failure to cease questioning her when she invoked her right to counsel—was a discretionary act performed in the course of Presson's official duties. Harris's suit is therefore barred, as a matter of law, by the doctrine of official immunity.

## V. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

_____
Lisa S. Van Amburg, Judge

Angela T. Quigless, C.J., and
Kurt S. Odenwald, J., concur.

6