

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

TERRY MCILVOY, )
)
    Appellant, )
)
    v. )     WD78822
)
JAMES SHARP, ET AL., )     Opinion filed:  February 9, 2016
)
    Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI
### THE HONORABLE DANIEL R. GREEN, JUDGE

Before Division Three:  Joseph M. Ellis, Presiding Judge,
Karen King Mitchell, Judge and Gary D. Witt, Judge

Terry McIlvoy appeals from a judgment entered in the Circuit Court of Cole County dismissing his *pro se* petition asserting § 1983 claims against assorted government employees and agencies related to his treatment while incarcerated.  For the following reasons, the judgment is affirmed.

Appellant is incarcerated in the Jefferson City Correctional Center ("JCCC").  In 2013, Appellant worked in a furniture factory at JCCC operated by Missouri Vocational Enterprises ("MVE"), a program within the Division of Offender Rehabilitative Services of the Missouri Department of Corrections.  On November 11, 2013, Appellant was

involved in a confrontation with James Sharp, a supervisor employed by MVE, after Appellant had failed to turn off a machine before performing repairs on it.

On August 25, 2014, Appellant, acting *pro se*, filed his "Complaint Under the Civil Rights Act U.S.C. § 1983" in the Circuit Court of Cole County against Sharp, JCCC, and MVE. He also named as defendants Nick Miller, an investigator for JCCC; James Hess, an administrative investigator for JCCC; and Amy Roderick, Inspector General for the Department of Corrections. Appellant generally claimed that Sharp assaulted him on November 11, 2013, by hitting him in the head three times with his fist,[1] that he had been retaliated against for filing a grievance regarding that assault, that his complaint was not properly investigated, that Sharp had tampered with witnesses, and that all of the individual defendants had deliberately tried to cover up the incident. He contended that these actions violated his civil rights. Appellant sought two million dollars in damages from each of the named individual defendants.[2]

On October 24, 2014, JCCC, MVE, Roderick, Miller, and Hess filed a motion to dismiss Appellant's claims against them. JCCC and MVE asserted that they were shielded from liability by sovereign immunity and that they were not "persons" capable of being sued under § 1983. Roderick, Miller, and Hess asserted that they were entitled to sovereign immunity, were not "persons" under § 1983 because they were sued in their official rather than personal capacity, and were entitled to qualified immunity. They

---

[1] Appellant averred that Sharp hit him because he and a co-worker had previously failed to shut off the power to a machine they had been working on and because Appellant was not answering questions being asked by Sharp related thereto.

[2] Appellant also asked the court to charge and prosecute Sharp for second degree assault, order Sharp fired and removed from the furniture factory, allow Appellant to watch Sharp being escorted out of the prison, preclude Sharp from ever being allowed to work for the Department of Corrections again, order the JCCC medical staff to provide Appellant with amodium lactate for his skin condition, to enter an order precluding any retaliation against Appellant or witnesses on his behalf, and to preclude Sharp and MVE from being represented by the Attorney General's Office.

further contended that Appellant failed to include in his petition sufficient factual allegations to state a cause of action against them.

Subsequently, Sharp filed a motion for summary judgment. He contended that, by failing to expressly state that he was suing Sharp in his personal capacity, Appellant must be presumed to have only sued him in his official capacity and that Appellant's claims against him were, therefore, barred by sovereign immunity. Sharp further claimed to be entitled to qualified immunity. He also contended that Appellant could not establish that he used excessive force against him based upon videotape footage of the incident and the fact that Appellant required no medical attention. Sharp further argued that Appellant could not establish any prejudice resulting from any witness tampering because the videotape conclusively refuted Appellant's administrative complaint. Lastly, Sharp argued that Appellant would not be able to prove that he played any role in the alleged retaliation against him because he had no authority to place Appellant in "the Hole," change Appellant's housing assignments, or determine Appellant's work assignments.

The trial court eventually entered an order granting the motion to dismiss the claims against JCCC, MVE, Roderick, Miller, and Hess "for the reasons set forth in the motion." It later issued its judgment granting Sharp's motion for summary judgment "for the reasons set forth in [that] motion" and dismissing Appellant's claims against Sharp. No specific findings of fact or conclusions of law were offered by the trial court in making either ruling.

Again acting *pro se*, Appellant brings eleven points on appeal challenging the trial court's dismissal of his claims against the various defendants, many of which are

difficult to decipher or to ascertain the legal theory being advanced. In any event, the trial court's granting of the motion to dismiss the claims against JCCC, MVE, Roderick, Miller, and Hess, as well as its decision to enter summary judgment in favor of Sharp, are determinations that this Court reviews *de novo* and that we must affirm if properly entered for any of the reasons set forth in those motions. **Kixmiller v. Board of Curators of Lincoln Univ.**, 341 S.W.3d 711, 713 (Mo. App. W.D. 2011); **Voyles v. Voyles**, 388 S.W.3d 169, 171-72 (Mo. App. E.D. 2012). Accordingly, we will conduct our review by determining whether a reason stated in each of those respective motions justified the trial court's decision to grant the motion.

We begin by analyzing whether the claims against JCCC, MVE, Roderick, Miller, and Hess were properly dismissed for failure to state a claim on which relief could be granted. "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." **Stephens v. Dunn**, 453 S.W.3d 241, 248 (Mo. App. S.D. 2014) (internal quotation omitted). "This Court does not attempt to weigh whether the alleged facts are credible or persuasive." **Harris v. Presson**, 445 S.W.3d 127, 129 (Mo. App. E.D. 2014) (internal quotation omitted). "Rather, we accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and we construe all allegations favorably to the pleader to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." **Id**. (internal quotations omitted). This Court "must affirm the trial court's ruling if the motion to dismiss could have been sustained on any of the meritorious grounds raised in the motion regardless of whether the trial court ruled on that particular ground." **Kixmiller**, 341 S.W.3d at 713.

4

JCCC and MVE are public entities and, as such, subject to some limited exceptions,[3] are afforded sovereign immunity from tort actions under § 537.600.1. *O'Dell v. Missouri Dep't of Corrections*, 21 S.W.3d 54, 57 (Mo. App. E.D. 2000). "Missouri courts have routinely held that sovereign immunity is not an affirmative defense and that the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity when suing a public entity." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 137 (Mo. App. E.D. 2009). Appellant's petition does not identify any exception to sovereign immunity that might be applicable to this case, nor does it set forth facts that would give rise to any recognized exception to sovereign immunity. Since he failed to plead facts giving rise to an exception to sovereign immunity, Appellant did not state a claim for which relief could be granted against JCCC or MVE, and the trial court properly dismissed his claims against them. *Phelps v. City of Kansas City*, 371 S.W.3d 909, 916-17 (Mo. App. W.D. 2012).

We next assess whether the claims against Roderick, Miller, and Hess were properly dismissed for failure to state a claim. "The role of pleadings in Missouri is to identify facts upon which the plaintiff's claim rests."[4] *Thomas v. Denney*, 453 S.W.3d 325, 332 (Mo. App. W.D. 2014) (internal quotation omitted). "Under Missouri pleading rules, to state a claim, a petition must invoke substantive principles of law entitling the plaintiff to relief and allege ultimate facts informing the defendant of what the plaintiff will

---

[3] "A public entity with the status of a governmental body . . . is immune from suit for liability in tort in the absence of an express statutory provision." *Wyman v. Missouri Dep't of Mental Health*, 376 S.W.3d 16, 19 (Mo. App. W.D. 2012). "In the absence of an express waiver in a particular statute, a [public entity] generally has sovereign immunity from common-law tort actions in all but three circumstances: negligent operation of a motor vehicle, § 537.600.1(1); a dangerous condition on public property, § 537.600.1(2); and where the entity has purchased liability insurance (but only to the extent of the policy's coverage), § 537.610." *Id.*

[4] "Unlike the 'notice pleading' requirements of the federal courts, Missouri courts apply a 'fact pleading' standard." *Charron v. Holden*, 111 S.W.3d 553, 555 (Mo. App. W.D. 2003).

attempt to establish at trial." ***Charron v. Holden***, 111 S.W.3d 553, 555 (Mo. App. W.D. 2003). "The petition must state allegations of fact in support of each essential element of the cause pled." ***Thomas***, 453 S.W.3d at 332. "If a petition consists only of conclusions and does not contain ultimate facts or any allegations from which to infer those facts, a motion to dismiss is properly granted." ***Id***.

"Section 1983 allows a person who has had 'any rights, privileges, or immunities secured by the Constitution' violated by another, under the color of state law, to sue the violator for damages." ***Copeland v. Wicks***, 468 S.W.3d 886, 890 (Mo. 2015). In order to successfully bring a claim under § 1983, a plaintiff must plead and prove (1) that the defendant deprived the plaintiff "of a right, privilege, or immunity secured by the Constitution or the laws of the United States" and (2) that the defendant "was acting under the color of state law at the time of the conduct constituting the deprivation." ***France v. Hunter***, 368 S.W.3d 279, 286 (Mo. App. S.D. 2012). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." ***Bell v. Phillips***, 465 S.W.3d 544, 548 (Mo. App. W.D. 2015) (internal quotation omitted). "To state a § 1983 claim, a plaintiff must allege facts supporting any individual defendant's personal involvement or responsibility for the violations." ***Id***. (internal quotation omitted). Assertions of bare, conclusory allegations are not sufficient to state a claim. ***Charron***, 111 S.W.3d at 555.

In his petition, Appellant does not plead any facts establishing that Roderick, Miller, and Hess had any personal involvement with or responsibility for any deprivation of his constitutional or statutory rights. Indeed, none of the pleadings specifically refer to any of those individuals or identify any specific act committed by them.

6

Appellant has asserted in his suggestions in opposition to the motion to dismiss and on appeal that these individuals attempted "to cover up and sweep this incident under the rug," failed to do their jobs, failed to interview his witnesses, failed to escort Sharp out of the factory after Appellant reported that Sharp had hit him, and somehow participated in acts of retaliation against him. Even if averments of that nature had been included in his petition, such allegations would not be sufficient to state a claim against those defendants. The allegations related to a cover-up and to retaliation are wholly conclusory in nature, and the remaining allegations do not establish a violation of any right held by Appellant.

Because Appellant's petition did not allege facts establishing that Roderick, Miller, or Hess were personally involved in or responsible for any deprivation of his rights, he failed to state a cause of action against them. Accordingly, the trial court did not err in dismissing Appellant's claims against those defendants.

We next consider whether summary judgment was properly entered in favor of Sharp. Because the trial court makes its decision to grant summary judgment based upon the record submitted and the law, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. **Crow v. Kansas City Power & Light Co.**, 174 S.W.3d 523, 533 (Mo. App. W.D. 2005). In so doing, we apply the same criteria as the trial court to determine whether summary judgment was properly entered. **Bauer v. Farmers Ins. Co.**, 270 S.W.3d 491, 494 (Mo. App. W.D. 2008).

Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a

matter of law.[5] **Bauer**, 270 S.W.3d at 494. "A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one of the elements of the non-movant's claim; or (3) that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense." **Goerlitz v. City of Maryville**, 333 S.W.3d 450, 453 (Mo. banc 2011) (internal quotation omitted). "Each of these three methods individually establishes the right to judgment as a matter of law." **Id**. (internal quotation omitted).

In assessing whether summary judgment is proper, "[t]he record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." **Hammack v. Coffelt Land Title, Inc.**, 284 S.W.3d 175, 177-78 (Mo. App. W.D. 2009). "However, facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." **Id**. at 178 (internal quotation omitted). "The non-movant demonstrates a genuine issue of material fact by denying the allegations and citing specific references to the discovery, exhibits, or affidavits showing a genuine issue for trial." **Olson v. Curators of the Univ. of Mo.**, 381 S.W.3d 406, 410 (Mo. App. W.D. 2012) (citing **Rule 74.04(c)(2)**). "Where a motion for summary judgment is made and supported, . . . the opposing party may not rest upon the mere allegations or

---

[5] "A 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." **ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.**, 854 S.W.2d 371, 382 (Mo. banc 1993).

denials of the party's pleading" and must "support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." *Brehm v. Bacon Twp.*, 426 S.W.3d 1, 6 (Mo. banc 2014).

"When the trial court's order does not state the reasons for its grant of summary judgment, we presume that it is on the grounds specified in the movant's motion for summary judgment." *Lucero v. Curators of the Univ. of Mo.*, 400 S.W.3d 1, 4 (Mo. App. W.D. 2013) (internal quotation omitted). "We may affirm the circuit court's grant of summary judgment under any theory that is supported by the record." *Id*. (internal quotation omitted).

In cases by inmates alleging excessive force in violation of the *Eighth* and *Fourteenth Amendments*, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (internal quotation omitted). The focus is on the nature of the force utilized, "specifically, whether it was nontrivial and was applied maliciously and sadistically to cause harm." *Id*. 559 U.S. at 39, 130 S.Ct. at 1179 (internal quotation omitted).

Not every malevolent touch by a prison employee violates a prisoner's constitutional rights and gives rise to an action under § 1983. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). The prohibition on cruel and unusual punishments "necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37-38, 130 S.Ct. at 1178. "An inmate who complains of a 'push or shove' that causes no discernible injury almost

9

certainly fails to state a valid excessive force claim." *Id*. 559 U.S. at 37, 130 S.Ct. at 1178.

In the case at bar, Appellant claimed in his petition that Sharp hit him on the head three times with his fist as though he was "knocking on a door." He stated that Sharp had done so because Appellant had failed to shut off the power to a machine he had been repairing and because Appellant refused to respond to questions posed by Sharp about that violation of factory rules.[6] Appellant did not aver in his petition or in response to the motion for summary judgment that he suffered any injury or experienced significant pain as a result of Sharp hitting him on the head, and he expressly stated in his petition that no medical treatment was involved in his claims.

Accepting Appellant's version of the incident as true, the physical contact involved in this case is simply not sufficient to rise to the level of a violation of Appellant's constitutional rights. While the alleged physical contact, if found not to have been justified, might have been able to support a common law claim for battery, it does not rise to the level necessary to establish an excessive force claim under § 1983. *Id*. Accordingly, the trial court did not err in entering summary judgment in favor of Sharp on Appellant's § 1983 excessive force claim.

With regard to his claim of witness tampering, Appellant alleged that "there was a lot of witness Tampering by James Sharp with a lot of Inmate Employees." Aside from this wholly insufficient conclusory allegation, the only specific factual pleading offered by Appellant related to this claim was that Sharp gave Gary Jackman, who witnessed the

---

[6] His petition states, "Sharp hit the Plaintiff in the head 3 times with his fist, 'like you were knocking on a door', Because the Plaintiff and his Co-worker Gary Jackman forgot to shut off the Power to the Machine the Plaintiff and his Co-worker were working on, and because the Plaintiff refused to answer James Sharp."

10

underlying altercation, a pay raise "to keep his mouth shut and say he Did Not See anything." Appellant did not indicate how such behavior violated his rights or how he was damaged thereby. In fact, Appellant averred that, if called to testify, Jackman would testify truthfully. The trial court did not err in entering summary judgment in favor of Sharp on Appellant's § 1983 claim based on witness bribery and tampering.

In addressing Appellant's retaliation claims, in his statement of uncontroverted facts, Sharp averred that he "did not control decisions [Appellant] believed were retaliatory, including housing assignments and assignments to protective custody." He further averred that Appellant's application for a new work assignment was not reviewed by him and that the decision to deny his job request was made by the manager of the Graphic Arts Factory for non-retaliatory reasons. Those averments were supported by attached affidavits.

In response, while he generally denied those statements of uncontroverted fact, Appellant failed to support those denials with references to any discovery, exhibits, or affidavits demonstrating that there is a genuine issue for trial as required by Rule 74.04(c)(2). Since Appellant's denials were not properly supported, Sharp's statements of uncontroverted fact must be deemed admitted. *Central Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 320 (Mo. banc 2014). As the uncontroverted facts establish that Sharp was not involved in the allegedly retaliatory acts, the trial court did not err in entering summary judgment in favor of Sharp on the § 1983 related thereto.

Finally, with regard to Appellant's claims that his allegations were inadequately investigated, Sharp's motion for summary judgment asserted as an uncontroverted fact

that his only part in the investigation was giving a statement to an investigator regarding the incident and that the investigation was conducted by independent investigators. In response, while Appellant generally claimed that Sharp's statement to investigators influenced the investigation, he failed to identify any responsibility Sharp bore related to how the investigation was conducted and failed to support his denial with any reference to discovery, exhibits, or affidavits. Accordingly, Sharp's stated uncontroverted facts must again be deemed to have been admitted. *Id*. Based upon the uncontroverted fact that Sharp was not responsible in any way for investigating Appellant's complaint, the trial court properly entered summary judgment in his favor on Appellant's § 1983 claims against him related to how the investigation was conducted.

In short, the trial court properly entered summary judgment in favor of Sharp on all of Appellant's § 1983 claims directed toward him. Likewise, the trial court properly dismissed the claims against the other defendants for failing to state a claim.

A couple of Appellant's points challenging the trial court's disposition of the case touch on ancillary issues that we will gratuitously address though those points and arguments related thereto are improperly framed as challenges to the decision to dismiss his claims. In one of his points, Appellant contends that judgment was improperly entered against him because the trial court denied 42 different motions filed by him in the case and granted all 20 of the motions that had been filed by the State. He contends that this demonstrates that the trial court was biased and prejudiced against him.

Appellant offers no argument that the motions filed by him were erroneously denied or that the motions filed by the State were improperly granted aside from

12

claiming that his two motions for appointment of counsel were erroneously denied because **Gideon v. Wainwright**, 372 U.S. 335, 345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), mandated the appointment of counsel for him as a criminal defendant. Obviously, since Appellant is a civil plaintiff and not a criminal defendant in the case at bar, *Gideon* has no application to this case, and the trial court's rulings could not be deemed erroneous on that basis.

The mere fact that the trial court granted all of the State's motions and denied all of Appellant's motions does not, in and of itself, establish bias or prejudice on the part of the trial court or that the entry of judgment in favor of the defendants was improper. Point denied.

In his remaining point, Appellant contends that his claims were improperly dismissed because his discovery requests were not fully complied with by the State and the trial court denied his requests to compel that discovery. Appellant argues that the State refused to provide him an unedited copy of the videotape and failed to produce other unspecified discovery.

In this point and the argument related thereto, Appellant fails to identify the appropriate standard of review as required by Rule 84.04(e), to identify the specific rulings of the trial court being challenged, or to offer any legal argument as to why the trial court's rulings on the motions to compel were erroneous. This point and argument simply have not been developed sufficiently to allow for meaningful appellate review. "[W]here a brief is so defective as to require the appellate court and opposing counsel to hypothesize about the appellant's argument and precedential support for it, the merits cannot be reached." **City of Lee's Summit v. Cook**, 337 S.W.3d 757, 759 (Mo. App.

13

W.D. 2011). "Speculation on an appellant's arguments is not permitted by the appellate courts because such speculation would cast the court in the role of an advocate for the appellant." ***Willis v. Missouri Farm Bureau Servs.***, 396 S.W.3d 451, 454 (Mo. App. W.D. 2013) (internal quotation omitted). The point is, therefore, denied.

For the foregoing reasons, the judgment of the trial court is affirmed.

 

_____
Joseph M. Ellis, Judge

All concur.