Cynthia L. Martin, Judge
Brad Bradshaw ("Bradshaw") appeals a judgment dismissing his petition filed pursuant to section 116.200[1] which sought to compel John R. ("Jay") Ashcroft, the Missouri Secretary of State ("Secretary of State"), to reverse his decision to certify as sufficient Initiative Petition 2018-051 ("IP 2018-051") pertaining to medical marijuana. Bradshaw alleges that signatures in support of IP 2018-051 were not collected in the manner required by statute, and that as a result the Secretary of State should be enjoined from certifying the measure for inclusion on the ballot for the November 6, 2018 General Election. Because Bradshaw's petition fails to state a claim for compelling the Secretary of State's certification of the sufficiency of IP 2018-051 to be reversed, the judgment dismissing Bradshaw's petition is affirmed.
Factual and Procedural Background
On or about November 28, 2016, Sheila Dundon ("Dundon") submitted a sample sheet for IP 2018-051 to the Secretary of State.[2] On or about January 5, 2017, the Secretary of State approved the form of IP 2018-051 to be circulated for signatures, and certified the official ballot title for the measure.[3]
On or about May 4, 2018, Dundon filed signature pages for IP 2018-051 with the Secretary of State.[4] The Secretary of State thereafter sent copies of the signature pages to local election authorities to verify that the persons whose names were listed as signers of the initiative petition were registered voters in each election authority's jurisdiction.[5]
*81 On August 2, 2018, the Secretary of State issued a certificate certifying the sufficiency of IP 2018-051 and that the petition contained a sufficient number of valid signatures to be placed on the ballot for the November 6, 2018 General Election.[6] Specifically, the Secretary of State found that there were sufficient signatures from Congressional District Nos. 1, 2, 3, 4, 5, and 7, but that there were insufficient signatures from Congressional District Nos. 6 and 8.[7]
On August 10, 2018, Bradshaw, a citizen of Missouri, filed a petition in the Circuit Court of Cole County, Missouri seeking a writ of mandamus and injunctive relief. Bradshaw sought to compel the Secretary of State to reverse his decision to certify IP 2018-051, and to declare that the measure could not appear on the ballot for the November 6, 2018 General Election.[8] Bradshaw alleged, on information and belief, that: (i) "thousands of individuals ... signed [IP 2018-051] while not in the presence of the circulator;" (ii) "one or more of the signatures on [IP 2018-051] are not by registered voters in the district identified on the petition;" (iii) "one or more of the signatures on [IP 2018-051] do not state the signatory's name, registered voting address, city, town, or village correctly;" and (iv) "the circulators did not actually sign the affidavits in the presence of notaries." A preliminary writ of mandamus was issued, and the Secretary of State was ordered to answer the petition.
Dundon and New Approach Missouri ("New Approach"), a campaign committee organized to support IP 2018-051, then sought and were granted leave to intervene as additional defendants in Bradshaw's lawsuit. Dundon, New Approach, and the Secretary of State answered Bradshaw's petition. Dundon and New Approach (collectively "Intervenors") filed a motion to dismiss Bradshaw's petition for failure to state a claim upon which relief could be granted. The Secretary of State filed a motion to quash the preliminary writ of mandamus that had been issued. After these motions were fully briefed, they were set for hearing on August 30, 2018. During that hearing, Bradshaw withdrew his request for a writ of mandamus, and limited the relief he sought to an injunction compelling reversal of the certification of sufficiency for IP 2018-051 and enjoining appearance of the measure on the ballot for the November 6, 2018 General Election.
On August 31, 2018, the trial court entered its judgment ("Judgment") granting the Secretary of State's motion to quash the preliminary writ of mandamus that had been issued.[9] The Judgment also granted the Intervenors' motion to dismiss Bradshaw's petition for failure to state a claim upon which relief could be granted. The trial court found that Bradshaw's allegations were insufficient as a matter of law to support compelling the Secretary of State to reverse his decision to certify the sufficiency of IP 2018-051 as to permit the measure to appear on the ballot for the November 6, 2018 General Election.
Bradshaw filed this appeal on August 31, 2018, pursuant to section 116.200.3.[10]
*82 Expedited Disposition of Appeal
We have expedited the disposition of this appeal. Pursuant to section 116.200.2, if, following a challenge to the secretary of state's[11] certification of the sufficiency or insufficiency of an initiative petition, a court determines that the initiative petition is insufficient, "the court shall enjoin the secretary of state from certifying the measure and all other officers from printing the measure on the ballot." However, if a court determines that the initiative petition is sufficient, "the secretary of state shall certify it as sufficient and attach a copy of the judgment." Section 116.200.2. Pursuant to section 115.125.2, the last date on which late notification to local election authorities can be made pursuant to court order with respect to placing an issue on the ballot is 5:00 p.m. on the sixth Tuesday before the election. In this case, that deadline is September 25, 2018, the sixth Tuesday before the November 6, 2018 General Election. The parties have stipulated that the disposition of this appeal could affect whether IP 2018-051 is placed on the ballot for the November 6, 2018 General Election. Thus, the parties have stipulated that this appeal must be disposed by September 25, 2018, as the continued pendency of the appeal beyond that date would likely render the appeal moot. Dotson v. Kander , 435 S.W.3d 643, 644-45 (Mo. banc 2014).
Standard of Review
" 'Appellate review of a trial court's grant of a motion to dismiss is de novo. ' " Spencer v. Lombardi , 500 S.W.3d 885, 890 (Mo. App. W.D. 2016) (quoting Kixmiller v. Bd. of Curators of Lincoln Univ. , 341 S.W.3d 711, 713 (Mo. App. W.D. 2011) ). " 'A court reviews the petition in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action.' " Id. (quoting Kixmiller , 341 S.W.3d at 713 ). Our review is centered only on the allegations in the petition, and assumes that all properly pleaded factual allegations are true. McIlvoy v. Sharp , 485 S.W.3d 367, 371-72 (Mo. App. W.D. 2016) (emphasis added).[12] " 'The role of pleadings in Missouri is to identify facts upon which the plaintiff's claim rests.' " Id. at 372 *83 (quoting Thomas v. Denney , 453 S.W.3d 325, 332 (Mo. App. W.D. 2014) ). " 'Under Missouri pleading rules, to state a claim, a petition must invoke substantive principles of law entitling the plaintiff to relief and allege ultimate facts[.]' " Id. (quoting Charron v. Holden , 111 S.W.3d 553, 555 (Mo. App. W.D. 2003) ).
Analysis
Bradshaw's appeal challenges the dismissal of his petition which sought to compel reversal of the Secretary of State's certification of IP 2018-051 as sufficient for inclusion on the ballot for the November 6, 2018 General Election. To review whether Bradshaw's petition was properly dismissed for failure to state a claim, we must first understand the extent of the Secretary of State's authority to review IP 2018-051 for the purpose of determining and certifying its sufficiency.
The Secretary of State's Authority to Determine the Sufficiency of an Initiative Petition
The power of the initiative petition process is expressly reserved to the people in article III, section 49 of the Missouri Constitution.
Before an initiative petition can be circulated for signatures, "a sample sheet must be submitted to the secretary of state in the form in which it will be circulated." Section 116.332.1. The secretary of state is then obligated to "refer a copy of the petition sheet to the attorney general for his approval and to the state auditor for purposes of preparing a fiscal note and fiscal note summary."Id. "The secretary of state and attorney general must each review the petition for sufficiency as to form and approve or reject the form of the petition, stating the reasons for rejection, if any." Id. "If the petition is approved as to form [by the attorney general], the attorney general shall forward his or her approval as to form to the secretary of state within ten days after receipt of the petition by the attorney general." Section 116.332.3. "The secretary of state shall ... make a final decision as to the approval or rejection of the form of the petition." Section 116.332.4.
Section 116.040 specifies the form of an initiative petition, and directs that the form must be "substantially" followed. The form of an initiative petition is required to include notice that it is a crime to "sign any initiative petition with any name other than [one's] own, or knowingly to sign [one's] name more than once for the same measure for the same election, or to sign a petition when such person knows he or she is not a registered voter." Id. Section 116.040 requires the form of an initiative petition to afford a place for each person signing the petition to provide a signature, the date of signature, the signer's address including zip code, the signer's congressional district, and the signer's printed name. Section 116.040 requires the form of an initiative petition to include a circulator's affidavit swearing and affirming under penalty of perjury that persons identified on the petition "signed this page of the foregoing petition ... in my presence," and that the circulator believes each signer to be "a registered voter in the State of Missouri" in the county specified on the signature page. Section 116.040 requires the form of an initiative petition to afford a place for the circulator's affidavit to be signed by the circulator in the presence of a notary.
If the form of an initiative petition is approved by the secretary of state pursuant to section 116.332, the secretary of state is then required to post the sample petition on his or her website for public comment for fifteen days, after which, within twenty-three days of approval of the form, the secretary of state shall prepare *84 and submit to the attorney general a concise summary of the measure. Section 116.334.1. Thereafter, the attorney general has ten days to approve the "legal content and form of the proposed statement." Id. Until the official ballot title authorized by section 116.334 is certified by the secretary of state, no signatures supporting the initiative petition can be validly obtained. Section 116.334.2.
Once a submitted sample initiative petition has been approved as to form pursuant to section 116.132, and once an official ballot title has been certified by the secretary of state pursuant to section 116.334, the initiative petition can be circulated for signatures. "Any registered voter of the state of Missouri may sign initiative ... petitions." Section 116.060.
After signatures are collected, the proponent of the initiative petition must submit the petition to the secretary of state. Section 116.100 addresses the secretary of state's authority to accept and review an initiative petition, in pertinent part, as follows:
The secretary of state shall not accept any initiative petition submitted later than 5:00 p.m. on the final day for filing initiative petitions. All pages shall be submitted at one time. When an initiative ... petition is submitted to the secretary of the state, the signature pages shall be in order and numbered sequentially by county, except in counties that include multiple congressional districts, the signatures may be ordered and numbered using an alternate numbering scheme approved in writing by the secretary of state prior to submission of the petition. Any petition that is not submitted in accordance with this section, disregarding clerical and merely technical errors, shall be rejected as insufficient . After verifying the count of signature pages, the secretary of state shall issue a receipt indicating the number of pages presented from each county.
(Emphasis added.) In a related vein, section 116.060 provides that "[e]ach petition page filed with the secretary of state shall have the county where the signers are registered designated in the upper-right hand corner of such page."
Section 116.120 also addresses the secretary of state's statutory authority to determine the sufficiency of an initiative petition. It provides, in pertinent part, as follows:
1. When an initiative ... petition is submitted to the secretary of state, he or she shall examine the petition to determine whether it complies with the Constitution of Missouri and with this chapter. Signatures on petition pages that have been collected by any person who is not properly registered with the secretary of state as a circulator shall not be counted as valid.
Relevant to the secretary of state's obligations pursuant to section 116.120.1, section 116.040 provides that "[i]f [the] form [specified by section 116.040] is followed substantially and the requirements of section 116.050 and 116.080 are met, [the initiative petition] shall be sufficient , disregarding clerical and merely technical errors." (Emphasis added.) Section 116.050 addresses other requirements for the form of an initiative petition, including page size, the requirement that each page of the initiative petition attach or contain a full and correct text of the proposed measure, and the format and content of the full and correct text of the proposed measure. Sections 116.050.1 and .2. Section 116.080 addresses the required qualifications of and registration requirements for an initiative petition circulator (section 116.080.1), and provides at section 116.080.2 that:
*85 Each petition circulator shall subscribe and swear to the proper affidavit on each petition page such circulator submits before a notary public commissioned in Missouri. When notarizing a circulator's signature, a notary public shall sign his or her official signature and affix his or her official seal to the affidavit only if the circulator personally appears before the notary and subscribes and sears to the affidavit in his or her presence.
Section 116.080.2 thus reiterates form specifications set forth in section 116.040 relating to the circulator's affidavit, and the requirement that it be signed in the presence of a notary.
Also relevant to the secretary of state's obligations pursuant to section 116.120.1 is article III, section 50 of the Missouri Constitution which provides, in pertinent part, that "[i]nitiative petitions proposing amendments to the constitution shall be signed by eight percent of the legal voters in each of two-thirds of the congressional districts in the state[.]" Section 116.120.1 authorizes the secretary of state to "verify the signatures on [an initiative] petition by use of a random sampling ... [which] include an examination of five percent of the signatures" on the petition. Section 116.120.2 provides that if the random sampling "establishes that the number of valid signatures is less than ninety percent of the number of qualified voters needed to find the petition sufficient in a congressional district, the petition shall be deemed to have failed to qualify in that district." Section 116.120.3 provides that "[i]f the random sample verification establishes that the number of valid signatures total more than one hundred ten percent of the number of qualified voters needed to find the petition sufficient in a congressional district, the petition shall be deemed to qualify in that district ." (Emphasis added.) Finally, section 116.120.4 provides that "[i]f the random sampling shows the number of valid signatures within a congressional district is within ninety to one hundred ten percent of the number of signatures of qualified voters needed to declare the petition sufficient in that district, the secretary of state shall order the examination and verification of each signature filed."
To determine the validity of signatures on an initiative petition, section 116.130.1 authorizes the secretary of state to "send copies of election pages to [local] election authorities to verify that the persons whose names are listed as signers to the petition are registered voters," which "verification may either be of each signature or by random sampling as provided in section 116.120, as the secretary of state shall direct." Section 116.130.1 continues to provide that:
Each election authority shall check the signatures against voter registration records in the election authority's jurisdiction, but the election authority shall count as valid only the signatures of persons registered as voters in the county named in the circulator's affidavit.[13] Signatures shall not be counted as valid if they have been struck through or crossed out.
Section 116.130.3 provides that if an initiative petition signer is determined by the election authority to have written the wrong congressional district number after the signer's signature, "the election authority or the secretary of state shall correct the congressional district number on the petition page," and the "[f]ailure of a *86 voter to give the voter's correct congressional district number shall not by itself be grounds for not counting the voter's signature."
Finally, section 116.130.4 directs that "[t]he election authority shall verify the number of pages received for that county, and also certify the total number of valid signatures of voters from each congressional district which the election authority has been asked to check by the secretary of state." Section 116.130.4. Once local election authorities certify the validity of signatures on an initiative petition, the secretary of state is afforded no statutory authority to disregard the certification, save the limited authority provided by section 116.140. Section 116.140 provides that "[n]otwithstanding certifications from election authorities under 116.130, the secretary of state shall have authority not to count signatures on initiative ... petitions which are, in his opinion, forged or fraudulent signatures."
Once the secretary of state has reviewed an initiative petition as required by section 116.120.1, "if the secretary of state finds [the initiative petition] sufficient, the secretary of state shall issue a certificate setting forth that the petition contains a sufficient number of valid signatures to comply with the Constitution of Missouri and with this chapter."[14] Section 116.150.1. "If the secretary of state finds the petition insufficient, the secretary of state shall issue a certificate stating the reason for the insufficiency." Section 116.150.2.
Summarized, chapter 116 bifurcates the secretary of state's authority with respect to the initiative process into two stages: the pre-signature collection stage and the post-signature collection stage. Bradshaw's petition does not challenge the Secretary of State's pre-signature collection approval of the form of IP 2018-051 pursuant to section 116.332, or the Secretary of State's pre-signature collection certification of the official ballot title for IP 2018-051 pursuant to section 116.334. Instead, Bradshaw's petition challenges only the Secretary of State's post-signature collection certification of IP 2018-051 as sufficient pursuant to section 116.150.
The secretary of state's authority to determine the sufficiency of an initiative petition submitted after the signatures are collected falls into two categories: (i) whether the initiative petition follows statutory requirements relating to the form of the petition; and (ii) whether a sufficient number of valid signatures have been affixed to the initiative petition to satisfy the requirements of article III, section 50 of the Missouri Constitution.
With respect to the first category, the secretary of state is directed that an initiative petition "shall be sufficient" if the form required by section 116.040 "is followed substantially and the requirements of section 116.050 and section 116.080 are met." Section 116.040. In addition, the secretary of state is directed that a petition which fails to submit all signature pages at one time, and in order and numbered as required, "shall be rejected as insufficient," "disregarding clerical and merely technical errors." Section 116.100.
With respect to the second category, the secretary of state is directed not to count any signatures collected before an official ballot title is certified (section 116.334.4); not to count signatures from voters from counties other than the county designated on a signature page (section 116.060; section 116.130.1); not to count any signatures that have been struck *87 through or crossed out (section 116.130.1); and not to count signatures secured by an unregistered circulator (section 116.080.1). Beyond that, the secretary of state is required to determine whether all other signatures belong to registered voters, and whether sufficient valid signatures appear on an initiative petition to satisfy article III, section 50 of the Missouri Constitution. To do so, the secretary of state is authorized to ask local election authorities to certify the validity of signatures for their county. Although local election authorities are authorized to "count as valid only the signatures of persons registered as voters in the county named in the circulator's affidavit (section 116.130.1), once they do so, the local election authorities are required to "certify the total number of valid signatures of voters from each congressional district which the election authority has been asked to check by the secretary of state." Section 116.130.4. The secretary of state is required to accept the certification of valid signatures provided by local election authorities, subject only to the limited authority extended to reject certified signatures that, in the secretary of state's opinion, are fraudulent or forged. Section 116.140.
With this statutory backdrop in mind, we turn to the allegations in Bradshaw's petition to determine whether they state a claim upon which relief could be granted.
Bradshaw's Petition Fails to State a Claim Permitting Reversal of the Secretary of State's Certification of IP 2018-051 as Sufficient
Bradshaw alleges that the Secretary of State's certification of IP 2018-051 as sufficient should be reversed, and that the measure should not be permitted to appear on the November 6, 2018 General Election ballot. In reviewing the trial court's grant of the Intervenors' motion to dismiss Bradshaw's petition for failure to state a claim, the factual allegations in Bradshaw's petition that we deem true are as follows:
14. Upon information and belief, thousands of individuals, in excess of those needed for certification in the congressional districts [1, 2, 3, 4, 5 and 7], signed [IP 2018-051] while not in the presence of the circulator....[15]
15. For example, on multiple occasions, [IP 2018-051] was placed at retail establishments for individuals to sign without doing so in the presence of the circulator.
16. Upon information and belief, one or more of the signatures on [IP 2018-051] are not by registered voters in the district identified on the petition.
17. Upon information and belief, one or more of the signatures on [IP 2018-051] do not state the signatory's name, registered voting address, city, town, or village correctly.
18. Upon information and belief, the circulators did not actually sign the affidavits in the presence of notaries for [IP 2018-051].
We address these allegations in turn, mindful that to reverse the trial court's grant of Intervenors' motion to dismiss, we must find that the facts alleged, deemed true, meet the elements of a recognized cause of action. Spencer , 500 S.W.3d at 890. In other words, the facts alleged, deemed true, must establish that the Secretary of State improperly exercised his authority to determine and certify the sufficiency of IP 2018-051. See section 116.200.1.
*88 The allegations in paragraphs 14, 15, and 18 of Bradshaw's petition relate to statutory requirements for the form of an initiative petition specified in sections 116.040 and 116.080. Sections 116.040 and 116.080 do require a circulator to swear and affirm under oath, and in the presence of a notary, that each person signing an initiative petition did so in the circulator's presence. However, neither section, nor any other provision in Chapter 116, authorizes the secretary of state to look behind a circulator's notarized affidavit to determine its veracity or proper execution. Instead, section 116.040 expressly provides that "[if] this [initiative petition] form is followed substantially and the requirements of section 116.050 and section 116.080 are met, [the initiative petition] shall be sufficient , disregarding clerical and merely technical errors." (Emphasis added.) Thus, although section 116.120.1 requires the secretary of state to confirm compliance with the requirements of the Missouri Constitution and Chapter 116 as a condition of certifying the sufficiency of an initiative petition, that obligation is necessarily tempered by section 116.040's unambiguous directive that an initiative petition "shall be [certified] sufficient" if the form specified by section 116.040 is substantially followed and the requirements of section 116.050 and section 118.080 are met.
Here, Bradshaw does not allege that the circulator affidavits on IP 2018-051 were not signed. And Bradshaw does not allege that the circulator affidavits on IP 2018-051 were not notarized. In fact, Bradshaw concedes that IP 2018-051 contained signed and notarized circulator affidavits. Bradshaw nonetheless argues that we should disregard IP 2018-051's facial compliance with sections 116.040 and 116.080 because the Secretary of State was required to confirm that the circulators' affidavits and the notary attestations were truthful.
Chapter 116 does not impose this obligation on the secretary of state. Nor does Chapter 116 expressly provide that a circulator's dishonesty in an affidavit, or a notary's dishonesty in an attestation, will require otherwise valid voter signatures not to be counted. Our Supreme Court has underscored that "the paramount concern in construing statutes governing initiative petitions is determining whether or not the statute makes a specified irregularity fatal." Committee for a Healthy Future, Inc. v. Carnahan , 201 S.W.3d 503, 509 (Mo. banc 2006). " 'If not, courts will not be astute to make it fatal by judicial construction.' " Id. (quoting United Labor Comm. of Missouri v. Kirkpatrick , 572 S.W.2d 449, 453 (Mo. banc 1978) ). That is because our courts "zealously guard" the power of the initiative reserved to the people by the Missouri Constitution. Boeving v. Kander , 496 S.W.3d 498, 506 (Mo. banc 2016). As such, " '[c]onstitutional and statutory provisions relative to initiative are liberally construed to make effective the people's reservation of that power.' " Id. (quoting Missourians to Protect the Initiative Process v. Blunt , 799 S.W.2d 824, 827 (Mo. banc 1990) ). "Accordingly, in the absence of any clear and unambiguous statutory requirement invalidating signatures gathered on petition pages ... the Court will not infer such a requirement." Id. at 507.
Applying these settled principles, we conclude that if an initiative petition's signature pages are signed by circulators and notarized, then the forms substantially follow section 116.040, and the requirements of section 116.080 have been met, for purposes of the secretary of state's determination of the sufficiency of the petition. The General Assembly has not expressed the intent to declare voter signatures invalid based on a dishonest circulator *89 affidavit or notary attestation.[16] We will not infer that intent.
Our conclusion is consistent with Missouri Supreme Court precedent addressing alleged irregularities involving the circulator's affidavit and the required notary. In Committee for a Healthy Future, 201 S.W.3d at 509, an opponent to an initiative petition contended "that signatures should not be considered valid if they appear on a page where the circulator's affidavit required by section 116.040 RSMo 2000, is incomplete or notarization is missing." The Supreme Court disagreed, holding that " '[i]f the validity of the voters' signatures can be otherwise verified, their signatures should not be invalidated by the notary's negligence or deliberate misconduct.' " Id. (quoting United Labor , 572 S.W.2d at 454 ). The Court noted that " United Labor has not been invalidated by changes in the election laws and continues to establish the proper focus---Do the requisite numbers of signatures appear on the petition?" Id. As in Committee for a Healthy Future , the trial court in this case "properly focused on the signatures' validity and properly rejected [Bradshaw's] attempt to invalidate signatures because of errors committed [allegedly] by persons other than the signers." 201 S.W.3d at 509-10.
Bradshaw argues that "the notary and circulator requirements exist to ensure that an individual's name that appears on an initiative petition is actually and freely signed," and that unless the secretary of state is required to investigate and independently confirm compliance with those requirements as a condition of certifying the sufficiency of an initiative petition, "the propriety and integrity of the initiative-petition process in the State of Missouri is compromised." [Bradshaw's petition, paragraph 23] We disagree. To construe sections 116.040 and 116.080 as Bradshaw suggests would require us to ignore section 116.040's unambiguous directive to deem sufficient any initiative petition which substantially follows the requirements of section 116.040. "Courts will reject an interpretation of a statute that requires ignoring the very words of the statute." State ex rel. Womack v. Rolf , 173 S.W.3d 634, 638 (Mo. banc 2005). Moreover, to accept Bradshaw's construction of sections 116.040 and 116.080 would require us to ignore our obligation to liberally construe statutory provisions to make the power of initiative effective. Boeving , 496 S.W.3d at 506. As our Supreme Court held in United Labor , "construction 'of a law as would permit the disenfranchisement of large bodies of voters, because of an error of a single official, should never be adopted where the language in question is fairly susceptible of any other.' "
*90 572 S.W.2d at 454 (quoting Bowers v. Smith , 111 Mo. 45, 20 S.W. 101, 103 (Mo. 1892) ).
The issue is not whether a particular notary deems what he is doing important enough to comply with the technicalities of the statute by making sure that each circulator signs in his presence. To allow form to rule over substance is to permit the failure of the notary, whatever his reason, to defeat the initiative submission in spite of the fact that the proper number of voters have done all they can to comply with the initiative procedure. The only statutory purpose in having a notary sign the petition to begin with is to provide a double check on the validity of the signatures of the voters. It the validity of the voters' signatures can be otherwise verified, their signatures should not be invalidated by the notary's negligence or deliberate misconduct.
Id. The same reasoning applies analogously to the negligent or deliberate misconduct of a circulator.
We conclude that sections 116.040 and 116.080 are fairly susceptible of a construction that requires the secretary of state to conclude that an initiative petition is sufficient if it possesses a signed and notarized circulator's affidavit in substantially the form specified by section 116.040. If the absence of signed and notarized circulator affidavits on an initiative petition was not enough to permit the secretary of state to certify an initiative petition as insufficient in Committee for a Healthy Future , then the presence of signed and notarized circulator affidavits on IP 2018-051 could not have permitted the Secretary of State to certify IP 2018-051 as insufficient in this case despite a challenge to their veracity. In the absence of an express intent in Chapter 116 to invalidate signatures gathered on an initiative petition where a circulator or a notary negligently or deliberately disregards their statutory obligations, this "Court will not infer such a requirement."[17] Boeving , 496 S.W.3d at 507.
Undeterred, Bradshaw argues that Committee for a Healthy Future and United Labor are no longer good law because section 116.040 was amended effective November 4, 2014. It is true that section 116.040 was amended. Pertinent to this case, the statute added language to the specified form of the circulator's affidavit to reflect the circulator's acknowledgement that execution of the affidavit is under penalty of perjury. This language had previously appeared in section 116.080 RSMo 2000, but was removed from that statute effective November 4, 2014 and added instead to section 116.040. Bradshaw has not persuasively explained why this amendment to section 116.040 impacts the core holdings in Committee for a Healthy Future or United Labor . If anything, the language added to section 116.040 emphasizes the reasonableness of the Secretary of State's reliance on the veracity of the signed and notarized circulator affidavits on IP 2018-051.
Finally, Bradshaw argues that United Labor and Committee for a Healthy Future were wrongly decided. That argument is futile here.
*91 Doe v. Roman Catholic Diocese of St. Louis , 311 S.W.3d 818, (Mo. App. E.D. 2010) (holding that trial courts and intermediate appellate courts are bound to apply controlling law announced by the Missouri Supreme Court).
We find that the Secretary of State was required by section 116.040 and section 116.080 to accept facially sufficient signed and notarized circulator affidavits in determining whether to certify IP 2018-051 as sufficient. The trial court did not err in granting the Intervenors' motion to dismiss Bradshaw's petition for failure to sate a claim, even presuming the factual allegations in paragraphs 14, 15, and 18 of the petition to be true.
We next address the allegations in paragraphs 16 and 17 of Bradshaw's petition, which challenge the validity of signatures on IP 2018-051. Paragraph 16 alleges that "one or more of the signatures on [IP 2019-051] are not by registered voters in the [congressional] district identified on the petition." However, section 116.130.3 provides that if either a local election authority or the secretary of state determines that a signer on an initiative petition has listed the wrong congressional district, that error is to be corrected, and that the signer's failure "to give the voter's correct congressional district shall not by itself be grounds for not counting the voter's signature." The factual allegation in paragraph 16 of Bradshaw's petition, deemed true, would not support reversing the Secretary of State's certification of IP 2018-051 as sufficient. See Committee for a Healthy Future , 201 S.W.3d at 509 (holding that neither the omission of a congressional district number, nor the failure to give the correct congressional district number, on an initiative petition, is "fatal to the signature being counted pursuant to section 116.130.3").
Next, paragraph 17 of Bradshaw's petition alleges that "one or more" signers of IP 2018-051 failed to "state the signatory's name, registered voting address, city, town, or village correctly." This assertion, even presuming its truth, does not establish a basis for reversing the Secretary of State's certification of IP 2018-051 as sufficient for several reasons.
First, Bradshaw does not allege that any signatures suffering from the deficiencies identified were certified as valid by local election authorities. Unless they were certified as valid, the signatures have no impact on the sufficiency of IP 2018-051. Second, Bradshaw does not allege that the signatures which purportedly suffer from the deficiencies identified are in an amount that would reduce the number of valid signatures on IP 2018-051 below that required to certify the petition as sufficient. Unless the number of signatures at issue would have impacted compliance with article III, section 50 of the Missouri Constitution, Bradshaw's assertion is irrelevant.
Third, Bradshaw does not allege that the deficiencies identified mean that the signers were not registered voters in the county named on the signature page.[18] "The issue is not ... whether the petition signer is registered at a different address. The issue is whether the signer is registered to vote in that county, and, therefore, able to vote on the amendment proposed by the petition he or she signed." Committee for a Healthy Future , 201 S.W.3d at 508. Our Supreme Court has *92 concluded that irregularities in self-reported voter information such as "name, date, and address are not sufficient to disprove the validity of the voter's signature when the [local election authorities] have specifically reviewed the signatures and matched them with registered voters." Id. at 509. Registration to vote at a different address than that listed on an initiative petition does not in and of itself negate a signer's status as a registered voter. Id. at 508.
Finally, Bradshaw's assertion ignores that once the Secretary of State referred validation of signatures to local election authorities as permitted by section 116.130, (which Bradshaw alleges occurred in paragraph 10 of his petition), subsequent certification of the validity of signatures by local election authorities was controlling on the Secretary of State, subject only to his limited authority to disregard certified signatures he believed to be fraudulent or forged. Section 116.140.
The trial court did not err in granting the Intervenors' motion to dismiss Bradshaw's petition for failure to state a claim, even presuming the factual allegations in paragraphs 16 and 17 of the petition to be true.
Conclusion
The trial court's Judgment is affirmed.
All concur

All statutory references are to RSMo 2016 unless otherwise expressly noted.

See section 116.332.

See sections 116.332 and 116.334.

See section 116.100.

See section 116.130.

See section 116.150.

Article III, section 50 of the Missouri Constitution provides, in relevant part, that initiative petitions proposing constitutional amendments "shall be signed by eight percent of the legal voters in each of two-thirds of the congressional districts in the state[.]" There are eight congressional districts in Missouri.

See section 116.200.

Bradshaw has not appealed this ruling.

Section 116.200.3 provides that "[w]ithin ten days after a decision is rendered [on a petition challenging the secretary of state's certification of an initiative petition as either sufficient or insufficient], any party may appeal it to the supreme court." Under analogous circumstances, our courts have concluded that an attempt by statute to extend exclusive jurisdiction to the Supreme Court to entertain an appeal is of no effect unless the subject matter of the suit is within the scope of the Supreme Court's exclusive jurisdiction as provided in the Missouri Constitution. See Boeving v. Kander , 493 S.W.3d 865, 872-73 (Mo. App. W.D. 2016). "This appeal does not raise any issue which would trigger the Supreme Court's exclusive appellate jurisdiction. Therefore, [section 116.200.3] cannot be read to authorize a direct appeal to the Supreme Court." Id. at 873.

Our references to the office of the secretary of state generally, as opposed to the Secretary of State currently in office and named as a defendant in Bradshaw's lawsuit, are not capitalized.

We emphasize this point because Bradshaw's petition alleges several conclusions that are not ultimate fact allegations, none of which we are required to assume as true for purposes of our standard of review. McIlvoy v. Sharp , 485 S.W.3d 367, 372 (Mo. App. W.D. 2016) (holding that "ultimate facts informing the defendant of what the plaintiff will attempt to establish at trial" must be alleged, and that "conclusions [that do] not contain ultimate facts or any allegations from which to infer those facts" are not sufficient to avoid the grant of a motion to dismiss). For example, Bradshaw's petition alleges: (i) that if certain provisions of chapter 116 are not complied with "the propriety and integrity of the initiative-petition process ... is compromised"; and (ii) that IP 2018-051 "cannot be properly certified in accordance with the statutory and constitutional rights of the people of Missouri." These, and other similar conclusory assertions in Bradshaw's petition, carry no weight in connection with our review of the trial court's grant of the Intervenors' motion to dismiss.

See also section 116.060 which provides that "[s]ignatures of voters from counties other than the one designated by the circulator in the upper right-hand corner on a given page shall not be counted as valid."

A certification of sufficiency can only be issued for an initiative petition that was first approved as to form pursuant to section 116.332. Section 116.150.2.

At the end of this paragraph, Bradshaw's petition alleged that the signatures were rendered invalid. This is a legal conclusion, not an ultimate factual allegation, and we do not deem it true for purposes of our review.

When the General Assembly has intended the failure to abide by a statutory requirement related to the initiative process to require votes not to be counted, it has had no trouble expressly saying so. See, e.g. , section 116.334.4 (providing that votes collected before an initiative petition form is approved and an official ballot title is certified are not to be counted); section 160.060 (providing that signatures for voters from counties other than the county designated on the signature page are not to be counted); section 116.130.1 (providing that signatures for voters from counties other than the county designated on the signature page are not to be counted); section 116.130.1 (providing that voter signatures that have been struck through or crossed out are not to be counted); and section 116.080.1 (providing that signatures collected by an unregistered circulator are not to be counted). Because the legislature has demonstrated that it knows how to express its intent for voter signatures not to count under certain circumstances, we will not infer that intent where it is not expressed under other circumstances. See, e.g., State ex rel. Nothum v. Walsh , 380 S.W.3d 557, 569 (Mo. banc 2012) ; Mansfield v. Horner , 443 S.W.3d 627, 659-60 (Mo. App. W.D. 2014).

It is noteworthy that the General Assembly has expressly identified a remedy other than negating the validity of signatures for statutory violations committed by circulators or notaries in connection with the initiative process. See section 116.040 (requiring the circulator's affidavit to be under penalty of perjury); section 116.080.3 (providing that "a circulator who falsely swears to a circulator's affidavit knowing it to be false is guilty of a class A misdemeanor"); section 486.370 (providing that a notary public who knowingly and willingly, or recklessly, commits any official misconduct is guilty of a misdemeanor).

Initiative petition signers who are not registered as voters in the county named in the circulator's affidavit for that signature page (section 116.130.1) or in the county designated by the circulator in the upper right-hand corner of a signature page (section 116.060) shall not be counted as valid signatures. However, Bradshaw's petition did not allege that signers of IP 2018-051 who were counted as valid signers were disqualified under either of these statutory provisions.