

*In the*
## MISSOURI COURT OF APPEALS
### WESTERN DISTRICT

| | | |
|---|---|---|
| **DAVID SEYMOUR, ET AL.,** | ) | |
| | ) | |
| **Appellant-Respondents,** | ) | **WD85134 consolidated with** |
| | ) | **WD85157 and WD85166** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | |
| **SWITZER TENANT LLC, ET AL.,** | ) | **April 25, 2023** |
| | ) | |
| | ) | |
| **Respondent-Appellants.** | ) | |
| | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable John M. Torrence, Judge**

**Before Division Three: Janet Sutton, Presiding Judge,**
**Cynthia L. Martin, Judge and Edward R. Ardini, Jr., Judge**

David Seymour and Joel Barrett (the tenants) appeal from the judgment of the Jackson County Circuit Court entered in favor of Switzer Tenant LLC (Switzer) and Weigand-Omega Management, Inc. (Weigand) after a jury trial. On appeal, the tenants (1) challenge the trial court's grant of partial summary judgment in favor of Switzer and against the tenants on the tenants' claim for breach of the implied warranty of habitability; and (2) contend the trial court erred in refusing their proposed jury instruction on the Missouri Merchandising Practices Act (MMPA) claim. We affirm.

**Factual and Procedural Background**

In July 2017, the tenants leased unit D-501(the unit), from Switzer in a complex known as the Switzer Lofts. This was a newly renovated complex and the tenants were the first to occupy that unit. The tenants' lease was eventually terminated when extensive repairs were needed to address HVAC issues and the tenants moved out of the unit at the end of April 2018.

In November 2019, the tenants filed suit against Switzer, Foutch Brothers, LLC (the architect of Switzer Lofts) (Foutch), and Weigand (the management company for the property). The tenants filed a first amended petition that contained four claims: (1) violation of the MMPA against Switzer, Weigand, and Foutch; (2) breach of the implied warranty of habitability against Switzer, Weigand, and Foutch; (3) negligence against Foutch only; and (4) an alternative claim for conspiracy against Switzer, Weigand, and Foutch.

The MMPA claim generally alleged, *inter alia*, that Switzer, Weigand, and Foutch falsely represented the condition of the unit to induce the tenants to move in, that Switzer, Weigand, and Foutch failed to maintain the unit in a habitable manner, that Switzer, Weigand, and Foutch represented that the HVAC system would be energy efficient without having a reasonable basis to make that claim, that the tenants' lease was terminated in retaliation for making complaints about the HVAC system, and for forming a tenants' union in violation of the Kansas City Municipal Code, and that the tenants were prevented from attending the move-out inspection of the unit.

Switzer filed a motion for partial summary judgment seeking the trial court's order entering partial summary judgment in favor of Switzer with respect to the tenants' claims for breach of the implied warranty of habitability and civil conspiracy. In support of its motion, Switzer argued that the tenants failed to allege or provide evidence showing that the inadequate

2

heat "created a dangerous condition which posed a risk to life, health or safety of [the tenants]." The trial court entered partial summary judgment in favor of Switzer and against the tenants on the breach of the implied warranty of habitability claim and the civil conspiracy claim.[1]

The MMPA claim was tried to a jury. The following evidence was adduced at trial regarding the habitability of the unit as it related to the heating issue. The tenants first discovered the HVAC system that serviced the unit would not heat the unit to their desired temperature near Christmas 2017. Mr. Barrett testified that although the unit's furnace ran continually, he estimated the temperature in the unit to be "like 62 to 64 degrees." The tenants submitted a service request indicating that the "[h]eater does not heat properly" on January 1, 2018. On some occasions, the tenants documented the temperature of the unit—once, the temperature in the unit was 67 degrees even though the thermostat was set to 70 degrees, and another time, the unit's temperature was 69 degrees, when the thermostat was set to 73 degrees.

Switzer and Weigand, in an attempt to address the HVAC issues, installed baseboard heaters and a ceiling fan in the unit, and offered the tenants space heaters, which the tenants

---

[1] The tenants did not appeal the trial court's order granting partial summary judgment in favor of Switzer with respect to the civil conspiracy claim.

Weigand filed a motion for partial summary judgment seeking the trial court's order entering partial summary judgment in favor of Weigand with respect to the tenants' claims for breach of the implied warranty of habitability and the claim for civil conspiracy, which the trial court granted. The tenants did not appeal the trial court's order granting partial summary judgment in favor of Weigand.

Foutch filed a motion for summary judgment against the tenants with respect to all claims, which the trial court granted. The tenants did not appeal this ruling.

refused. On January 22, 2018, an HVAC repair technician made repairs in the unit, and after, the tenants reported the following to Weigand:

> When the [HVAC repair technician] left at 11:50 the temperature in our unit was at 68. I turned the thermostat up to 72 at 11:55. It took two and a half hours to rise to 70 and never reached 72 . . . . As you can understand, every day that passes is another day of expensive heating bills and frustration.

On January 25, 2018, the tenants were given the option to relocate to a different unit within the building, but the tenants declined the offer.

Mr. Barrett testified that he worked from the unit, and while they were "a little frustrated" at night because of the cold, that it felt "frigid," and that they needed extra blankets, both tenants slept in the unit every night and never spent the night elsewhere because it was too cold in the unit. In February 2018, the tenants hosted an open house with thirty to forty guests, and the invitations to the event indicated the tenants were enjoying the unit "to the fullest." Additionally, the tenants received a rent concession for the entire rent owed for February 2018, and received reimbursement checks for the difference in their utility costs from what the tenants considered to be "normal" utility costs.

After it became apparent that substantial repairs were needed in the unit and the repairs could not be completed while the tenants occupied the apartment, in mid-March 2018, Weigand, on behalf of Switzer, sent the tenants a lease termination letter. The letter indicated that the repairs were substantial and posed a danger to the tenants and would interfere with their safety, health and peaceful enjoyment of the property, and therefore the repairs could not be performed while the unit was occupied. Thus, the tenants needed to vacate the unit by the end of April 2018—forty-five days from the date of the letter.

At the close of evidence, Switzer and Weigand jointly moved for a directed verdict on the MMPA claim. The trial court granted the motion with respect to the portions of the MMPA

claim relating to alleged violations of the Kansas City Municipal Code and with respect to the tenants' punitive damages claim.

The jury returned a verdict in favor of both Switzer and Weigand. The trial court entered its judgment on October 1, 2021. The tenants filed a motion to vacate, amend, or set aside the judgment or in the alternative, motion for a new trial, which the trial court denied.[2]

The tenants appeal. Additional facts necessary to the disposition of the case will be included below as we address the tenants' points on appeal.

**Legal Analysis**

In two points, the tenants argue first, that the trial court erred in granting partial summary judgment in favor of Switzer on their claim for breach of the implied warranty of habitability and second, that the trial court erred in refusing to give their proposed verdict director on the MMPA claim. We address each point separately.[3]

---

[2] Switzer and Foutch filed a joint motion to amend the judgment to assess attorneys' fees against the tenants and Weigand filed its own motion requesting the court amend the judgment to assess attorneys' fees against the tenants. The trial court denied these motions. Switzer, Foutch, and Weigand filed cross-appeals, appealing the trial court's denial. We consolidated the appeals, but Switzer, Foutch, and Weigand have since voluntarily dismissed their appeals.

[3] Prior to the submission of the case, Switzer moved to strike portions of the tenants' brief, specifically its references to regulations promulgated by the City of Kansas City, Missouri Department of Health as part of the Healthy Homes Rental Inspection Program Rules and Regulations, asserting that these materials were not offered in evidence at the trial court and are therefore not properly before this Court. Switzer's motion to strike that portion of the tenants' brief is granted. Documents not considered by the trial court and not made part of the record cannot be introduced into the record on appeal. *See DeGennaro v. Alosi*, 389 S.W.3d 269, 275 n.5 (Mo. App. W.D. 2013). Moreover, we cannot take judicial notice of municipal regulations which were not offered into evidence in the trial court. *See Myers v. Moreno*, 564 S.W.2d 83, 87 n.2 (Mo. App. 1978); *Feely v. Birenbaum*, 554 S.W.2d 432, 437 (Mo. App. 1977); *Abbott v. Civ. Serv. Comm'n of City of St. Louis*, 546 S.W.2d 36, 37 (Mo. App. 1976).

## I.        Grant of Partial Summary Judgment

In their first point, the tenants claim that the trial court erred in granting Switzer's motion for partial summary judgment on their claim for breach of the implied warranty of habitability because there were genuine disputes of material fact as to whether the alleged inadequate heat in the unit had a material impact on the tenants' life, health or safety.

Our review of the trial court's decision to grant summary judgment is *de novo*.  *Show-Me Inst. v. Off. of Admin.*, 645 S.W.3d 602, 607 (Mo. App. W.D. 2022).  Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . ." Rule 74.04(c)(6).[4]  "When reviewing the entry of summary judgment, we view the record in the light most favorable to the party against whom the judgment was entered and accord the non-movant all reasonable inferences from the record." *Show-Me Inst.*, 645 S.W.3d at 604 n.2 (citing *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020)).

Defending parties, like Switzer, are entitled to summary judgment if they demonstrate one of the following:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support [their] properly pleaded affirmative defense.

*Sansone v. Governor of Mo.*, 648 S.W.3d 13, 20 (Mo. App. W.D. 2022) (quoting *Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013)).  "[F]acts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-

---

[4]  All rule references are to Missouri Supreme Court Rules (2021), unless otherwise indicated.

moving party's response to the summary judgment motion." *McIlvoy v. Sharp*, 485 S.W.3d 367, 374 (Mo. App. W.D. 2016) (citation omitted).

To defeat summary judgment, "a non-movant may not rest upon the mere allegations or denials of the party's pleading" and instead "must show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Brown v. Morgan Cnty.*, 212 S.W.3d 200, 202 (Mo. App. W.D. 2007) (citation omitted). "The non-movant demonstrates a genuine issue of material fact by denying the allegations and citing specific references to the discovery, exhibits, or affidavits showing a genuine issue for trial." *McIlvoy*, 485 S.W.3d at 374 (citation omitted); *Brehm v. Bacon Twp.*, 426 S.W.3d 1, 6 (Mo. banc 2014); Rule 74.04(c)(2).

When the trial court's order does not state the reasons for its grant of summary judgment, we presume that the trial court based its decision on the grounds raised in the movant's motion for summary judgment. *Loerch v. City of Union*, 601 S.W.3d 549, 553 (Mo. App. E.D. 2020); *McIlvoy*, 485 S.W.3d at 374. The trial court's grant of summary judgment may be affirmed on any theory that is supported by the record. *McIlvoy*, 485 S.W.3d at 374.

> "[A] landlord impliedly warrants the habitability of leased residential property" . . . [and] agrees to provide facilities and services that are "vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes" . . . To succeed on a claim for the breach of the implied warranty of habitability, the tenant must prove that the condition of the premises was of such a nature as to render the premises "unsafe or unsanitary."

*Kolb v. DeVille I Props., LLC*, 326 S.W.3d 896, 901 (Mo. App. W.D. 2010) (citations omitted). "The materiality of a breach of warranty claimed by a tenant shall be determined by factors, among others, of the nature of the deficiency or defect, its effect on the life, health or safety of the tenant, length of time it has persisted and the age of the structure.'' *Id.* (quoting *Moser v.*

*Cline*, 214 S.W.3d 390, 394 (Mo. App. W.D. 2007)). "A breach of implied warranty must be more than a *de minimis* violation or minor housing code violation." *Id.*

To prevail on a claim for a breach of the implied warranty of habitability, the tenants had the burden of proving: (1) they entered into a lease agreement for residential property; (2) subsequent development of dangerous/unsanitary conditions at the premises that materially impact the life, health, and safety of the tenants; (3) reasonable notice of the conditions to the landlord; and (4) the failure on the part of the landlord to restore the premises to a habitable condition. *Kolb,* 326 S.W.3d at 901; *Moser*, 214 S.W.3d at 394-95. Here, Switzer sought to establish its right to partial summary judgment by claiming that the tenants could not prove that the unit's heating issue and its impact were sufficient to support their claim for breach of the implied warranty of habitability.

The facts related to this issue, compiled from the properly supported uncontroverted facts contained within the summary judgment pleadings, are as follows. The tenants alleged in their amended petition that the unit "lacked adequate heating, which made it unsuitable for residential use and materially impacted [the tenants'] life, health, and quiet enjoyment." Specifically, the tenants alleged the following: "On December 24, 2017, [the tenants] began noticing major heating issues in their loft when Kansas City's temperature plummeted[,]" and "[t]hat day, the outside temperature dipped to around 21-27 [degrees] Fahrenheit, the coldest it had been since the previous winter." The tenants also alleged that they:

> [R]outinely kept their thermostat set to 68 [degrees,] [b]ut even with that generous setting, the furnace provided by [Switzer] and/or [Weigand] struggled to reach even that level when outside temperatures dropped below 40 [degrees Fahrenheit]. As a result, the furnace would often run indefinitely. Unfortunately, despite the furnace's incessant running, the [u]nit's interior temperature would never reach 68 [degrees Fahrenheit] when it was sufficiently cold.

8

The tenants acknowledged, in their petition, that Weigand installed baseboard heaters, a ceiling fan, and window coverings in the unit as a "temporary fix." The tenants alleged that the measures "failed" and that the unit "continued to suffer from the same heating issues" and that for the duration of their lease, they had to deal with "inadequate heating" in the unit. The tenants did not aver in their petition that the "inadequate" heating created a dangerous condition that posed a risk to their life, health or their safety.

In support of its motion for partial summary judgment, Switzer argued that the tenants failed to allege or set forth evidence demonstrating that the inadequate heat "created a dangerous condition which posed a risk to [the] life, health or safety of [the tenants]" and thus, the claim must fail as a matter of law. Switzer also argued that the tenants' complaints revolved around the tenants' apparent desire to stay in the unit despite the allegedly inadequate heat, that the heating issues were intermittent and temporary depending on the fluctuating weather conditions, and that the tenants only claimed that the intermittent heating issues caused "significantly higher utility bills." Switzer argued that the alleged severity of the heating issues in the tenants' unit was insufficient to support a claim for breach of the implied warranty of habitability and that Switzer was entitled to judgment as a matter of law.

The tenants filed an opposition to the motion for partial summary judgment, a response to Switzer's statement of uncontroverted material facts, and their own statement of uncontroverted material facts with attached exhibits. Switzer filed objections and responses to the tenants' statement of additional uncontroverted material facts.

As related to the unit's heating issues, in their statement of additional uncontroverted material facts, the tenants stated that a design flaw in the unit's HVAC system led to "heating

9

problems."[5] The tenants argued that "local codes" made it clear that adequate heating is a basic necessity for habitability, and that the "[d]efendants have admitted that [the unit] was not habitable." In support of their statements related to the heating issues in the unit, the tenants attached depositions and a letter from Weigand's legal counsel.

The tenants attached a deposition to establish that "design flaws" in the unit's HVAC system led to "heating problems." They also attached depositions showing the different actions that were taken to remedy the inadequate heat in the unit, but that those actions "did not fix the HVAC problems." These exhibits, however, failed to create a genuine issue of material fact sufficient to avoid summary judgment on the issue of breach of the implied warranty related to the alleged inadequate heat in the tenants' unit and whether it had a material impact on the tenants' life, health or safety.

Before trial and on appeal, the tenants rely heavily on exhibit G, a letter from Weigand's legal counsel that appears to be a response to the tenants' inquiry after the tenants received a lease termination letter. The tenants contend that this exhibit precluded entry of partial summary judgment on the issue of the implied warranty of habitability related to the heating issue because it established that Switzer and Weigand admitted that the unit was uninhabitable and that heating was a necessity for habitability. While this letter does include the specific language that "[h]eating is considered a necessity for habitability," this statement fails to create a genuine issue of material fact on the *specific* issue of the habitability of the tenants' unit as it related to the tenants' complaints about their heating issues.

Instead, this letter only established that Switzer and Weigand attempted to address the tenants' concerns regarding the heat in their unit but the tenants were not satisfied. The letter

---

[5] In response, Switzer denied this fact.

10

also outlined that substantial repairs were going to be completed in the unit, and that the repairs could not be done while the tenants resided in the unit. This exhibit did not establish the severity of the unit's "heating issues" or that the specific heating issues in the unit were of the type that posed a risk to the tenants' life, health or safety. Neither this exhibit, nor any other cited discovery, exhibits, or affidavits demonstrate that the alleged inadequate heat made the unit uninhabitable to present a genuine issue for trial under Rule 74.04(c)(2).

The tenants did not respond with references to any discovery, exhibits, or affidavits showing the risk that the unit's "inadequate heating" posed to their life, health or safety. The tenants, in their opposition to Switzer's partial summary judgment motion, simply made a conclusory argument that the "lack of heat in the [unit] created a dangerous and/or unsanitary condition." Additionally, the tenants do not dispute that they were never without heat. There was no genuine issue of material fact relating to the inhabitability of the unit based on the heating issue. Therefore, this negated the second element required to prove a breach of the implied warranty of habitability, that there was a subsequent development of dangerous or unsanitary conditions at the premises that materially impacted the life, health, and safety of the tenants.

Because Switzer demonstrated a right to judgment as a matter of law, and because the tenants failed to set forth specific facts showing that there was a genuine issue of disputed material fact for trial as to the habitability of the unit, the trial court properly entered partial summary judgment against the tenants and in favor of Switzer on the tenants' claim for breach of the implied warranty of habitability.

Point one is denied.

11

## II.     Proffered Jury Instruction

In their second point on appeal, the tenants assert the trial court erred in refusing to include in their proposed verdict director on the MMPA claim the alternate theory that Switzer and Weigand violated the MMPA by leasing and collecting rent for an uninhabitable apartment because there was substantial evidence to submit the claim in that the unit was "uninhabitably" cold due to the HVAC problems, that Switzer and Weigand knew of the problems, and they failed to correct or disclose them before the tenants signed their lease.

"The trial court's refusal to give a party's proffered instruction is reviewed *de novo*, evaluating whether the instructions were supported by the evidence and the law." *Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 32 (Mo. banc 2012); *Miller v. Norfolk S. R.R. Co.*, 591 S.W.3d 29, 38 (Mo. App. W.D. 2019).  To reverse on grounds of instructional error, the party claiming instructional error must establish (1) that the instruction at issue misdirected, misled, or confused the jury; and (2) prejudice resulted from the instructional error.  *Sorrell v. Norfolk S. R.R. Co.*, 249 S.W.3d 207, 209 (Mo. banc 2008).

At the close of the evidence, the trial court conducted an instruction conference, and the tenants proposed Instruction D, which provided, in relevant part:

> Your verdict must be for Plaintiffs David Seymour and Joel Barrett if you believe:
> First, in connection with the lease of [the unit] to Plaintiffs, Defendants did one or more of the following:
> 1. Terminated Plaintiffs' lease early under a false pretense;
> 2. Leased to Plaintiffs a unit which was uninhabitable;
> 3. Threatened to evict Plaintiffs because of, in retaliation, or as a pretext for Plaintiffs' efforts to organize or become a member of a tenants' union or similar organization;
> 4. Represented that [the unit] would be "energy efficient" without a reasonable basis for the claim; or,
> 5. Concealed, omitted, or failed to disclose any one or more of the following material facts:
>     a. [the unit] was not "energy efficient";
>     b. [the unit] was unable to provide sufficient heat;

12

c. [the unit] was not habitable; and,
Second, as a direct result of such conduct, Plaintiffs were damaged.

Instead, the trial court gave Instruction No. 7, which provided:

Your verdict must be for Plaintiffs David Seymour and Joel Barrett if you believe:
First, in connection with the lease of [the unit] to Plaintiffs, one or more
Defendants did one or more of the following:
 1. Terminated Plaintiffs' lease early under a false pretense;
 2. Represented that [the unit] would be "energy efficient" without a
 reasonable basis for the claim; and
Second, as a direct result of such conduct, Plaintiffs were damaged.

The tenants' claim that the trial court erred by refusing to include in the verdict director their theory, in proposed instruction D, that Switzer and Weigand violated the MMPA by leasing an uninhabitable apartment because there was "substantial evidence to submit that claim" in that there was evidence that the unit was "uninhabitably" cold due to the HVAC problems, and that Switzer and Weigand knew about the problem and failed to disclose it before the tenants signed their lease.  Before addressing the merits of the tenants' second point on appeal, we address whether the claimed error has been preserved for our review.

The tenants' second point relied on reads as follows:

The circuit court erred by refusing to include in the verdict director Plaintiff's theory, in proposed Instruction D, that Defendants violated the MMPA by leasing and collecting rent for an uninhabitable apartment in violation of the MMPA because there is substantial evidence to submit that claim in that Plaintiffs adduced testimony and documentary evidence showing that the unit was uninhabitably cold due to the HVAC problems Defendants failed to correct and that Defendants knew about the problem and failed to disclose it [to] Plaintiffs before they signed their lease.

To obtain reversal based on instructional error, the tenants "have the burden of demonstrating 'that the offending instruction misdirected, misled, or confused the jury, *resulting in prejudice to the party challenging the instruction*.'"  *Harned v. Spurlock*, 658 S.W.3d 562, 575 (Mo. App. W.D. 2022) (quoting *Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 186 (Mo. banc 2019)).  In *Harned*, the appellants failed to include an assertion of

13

prejudice—among other violations—in their point relied on relating to their claim of instructional error, and we concluded that because of this there was "a failure to preserve any claim of prejudice for our review." *Id.*

Like *Harned,* the tenants' "point relied on includes no assertion of prejudice, resulting in a failure to preserve any claim of prejudice for our review." *Id*. The tenants contend that they adequately assert prejudice in their brief by arguing that the error is considered prejudicial because by refusing their proposed instruction, which they contend is a properly supported jury instruction, it cut off a viable path to recovery for the jury to find in their favor.

We are unpersuaded by the tenants' arguments. First, "[t]o the extent prejudice is addressed in the argument portion of [the tenants'] brief, the argument is not preserved because [u]nder Rule 84.04(e), an appellant shall limit argument to those errors included in the points. We do not consider an argument not preserved in the Point Relied On." *Id.* (citation omitted). Additionally, the tenants also do not explain how the jury was misled, misdirected, or confused, instead focusing on their proposed instruction and why they believe it was warranted.

Even if this claim of error had been properly preserved for appellate review, reversal is not warranted because the trial court did not err in refusing to give the tenants' proposed verdict director. As we have already concluded in point one, the trial court properly granted partial summary judgment in favor of Switzer and against the tenants on the breach of the implied warranty of habitability claim, and therefore, the trial court properly refused the tenants' proposed Instruction D because of this earlier partial summary judgment ruling related to the habitability of the unit.

Because the trial court had entered partial summary judgment on the tenants' implied warranty of habitability claims, the tenants were precluded from submitting this theory to the

14

jury under their MMPA claim. In their motion for new trial, the tenants acknowledged this as the trial court's reasoning when it refused their proposed instruction, although the trial transcript that we have in the record on appeal does not include the trial court's rationale for refusing the tenants' proposed verdict director. On appeal, the tenants contend that substantial evidence existed to support giving their proposed instruction, but this is not the correct inquiry given the trial court's entry of partial summary judgment on the issue of habitability as it related to the heating issues in the unit.

Switzer had already demonstrated a right to judgment as a matter of law on the tenants' claim for breach of the implied warranty of habitability. "The purpose of summary judgment under Missouri's fact-pleading regime is to identify cases (1) in which there is no genuine dispute as to the facts and (2) the facts as admitted show a legal right to judgment for the movant." *McNearney v. LTF Club Operations Co., Inc.*, 486 S.W.3d 396, 401 (Mo. App. W.D. 2016). Here, the trial court conducted a judicial examination and determination of the issues related to the alleged breach of the implied warranty of habitability claim as it related to the tenants' complaints about inadequate heating in their unit and properly entered partial summary judgment in favor of Switzer. Therefore, this theory could not have been submitted to the jury for its consideration as part of the MMPA claim as it had already been judicially determined. *See, e.g., Taylor v. United Parcel Serv., Inc.*, 854 S.W.2d 390, 392–93 (Mo. banc 1993) (holding that a plaintiff's motion to reconsider summary judgment should be treated as a motion for new trial and declaring that "[f]or purposes of the rules, a summary judgment proceeding is a trial because it results in a judicial examination and determination of the issues between the parties."). The trial court did not err in refusing the tenants' proposed Instruction D.

Point two is denied.

15

## Conclusion

The trial court's judgment is affirmed.

_Janet Sutton_
Janet Sutton, Presiding Judge

Cynthia L. Martin and Edward R. Ardini, Jr., Judges concur.